May it please the Court good morning, Your Honors. My name is Hernandez Valera from Fairfax, Virginia, and I am representing Pro Bono, the plaintiff's appellants in this case, Your Honors. Your Honor, in this case there are two sets of plaintiffs. The first are the Filipino World War II veterans, and the second group are the survivors or the widows of the Filipino World War II veterans. The main issue being raised here is whether or not the district court lacks subject matter jurisdiction on the constitutional claims presented by the plaintiff's appellants. Now, the plaintiffs here, Judge, both the Filipino World War II veterans and the survivors or the widows are seeking redress from the perceived violation of their rights under the due process and equal protection clause of the Constitution. And their cause of action, therefore, arise and is based on and arises out of the U.S. Constitution. But your on the due process claim, though, it seems it's a challenge to the Secretary's policy of relying exclusively on NPRC records in the course of making benefit determinations. That's really what it boils down to, isn't it? That's one. In the due process clause, Your Honor, if the Department of Veterans Affairs relies solely on that mechanism that the only legitimate and valid way to prove that you have engaged in military service for the U.S. Armed Forces are the records of the Missouri lease, the so-called Missouri lease, then the petitioners here who are all U.S. citizens were denied solely on that basis, and therefore, there is no other opportunity to present their case, considering, Your Honors, that the plaintiffs were naturalized in them if they were not in the Missouri lease. They have medals coming from the Missouri lease. They have citations from the Missouri lease. But obviously, there is the sense of unreliability of the Missouri lease because it was burned way back in 1973. I understand. But the reality is that seems to be the gravamen of your due process claim, and doesn't that fall squarely within Section 511 of the Act? No, Your Honor. The stripping jurisdiction under the Veterans Judicial Review Act does not, because we are not burdening the district court on individual claims. What we are asking is, is it constitutional for the government to establish the sole mechanism of the NPRC or the Missouri lease as the only way to prove military service? Well, but you declined to go through the administrative process, if I understand correctly. Is that right? Your Honor, they have filed the appeals as well, but the focal issue that needs to be raised is other veterans, some would be doomed at the very start if your sole mechanism to prove that you engage in military is solely the NPRC. In fact, the USCIS, now the Department of Homeland Security, actually accepted, I have mentioned, secondary evidence to prove that you have served the U.S. Armed Forces under the definition now of the active military service. Please help me with this, counsel. The Congress set up this mechanism to resolve issues related to veterans' benefits. You decided that because of a reliance on what you're referring to as the Missouri list, that you want to go to the district court. But the way the statute is organized, the only way that you can make a decision with respect to an individual veteran's benefits is what the Secretary decides. The Secretary has decided to use the Missouri list. Congress delegated this to the Secretary. And ultimately, you're really dealing with, admittedly you characterize it as a broad thing, but the reality is this is not a facial challenge. This is an individual challenge. You've got a lot of individual people, all of whom I'm sure served with distinction. But under the rules that Congress has established, it said this is the way you've got to go and you've chosen not to go it. This is the problem. Under 1002 of the American Recovery and Reinvestment Act, it does not indicate, it is not the intention of Congress, that it limits a proof of military service based on the Missourians. In fact, the DBA, Your Honor, what they did was they made this standing policy without even subjecting it to comments and requirements. It's not even a problem. The question is why this didn't go to the Board of Veterans' Appeals, which is statutorily given the ability to hear just such a claim. I mean, the question in some ways is, because I understand the unfairness that you're talking about, but the statute seems pretty clear that it belonged within the administrative agency and then ultimately in the court for the Federal Circuit, and it did not belong in the district court. And that at least is the problem that I'm having. Yes. That's why on the issue of those filing individual claims, that's why at the outset I mentioned as well that there is a set of individuals who have not filed any at all, any individual claims for which they will not have an opportunity to be heard because they are precluded by virtue of the fact that they are not to be classified as beneficiaries under the Congressional Act. Because of the fire. That's referring to the veterans. I'm referring now to the second group, the widows, which did not file any claims. Let me read to you from 511A. It says the Secretary shall, this is the statute, the Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. That's pretty clear, isn't it? It's an express delegation by the Congress to the Secretary. The way the Secretary has chosen to implement that is using the Missouri list, as you call it. Your Honor, as I mentioned, there are two aspects here, the equal protection and the duplication. And the duplication is a process. Okay. Do you want to go to equal protection now? On the equal protection, yes, Your Honor, because both of them we submit that the stripping jurisdiction does not apply. Do you agree you've got a problem under the due process issue? Yes. Yes. Yes, Your Honor. However, the rationale behind the specialized review process of the Veterans Judicial Review Act is to, as established in Bates v. Nicholson, Your Honors, is not to overburden the district court for individual claims because district courts lack the expertise. But this is not the issue we are raising because what is to be resolved under the due process cost of action of plaintiffs is whether or not the requirement that the NPRC records be the sole means of establishing the requisite qualifying military service is violated with due process. Counsel, Judge Gould has a question for you on that. On your due process part of your case challenging going through that record center, how can you distinguish what our court decided in Veterans for Common Sense, where it was an NBANC decision, and I think it's 10 votes to 1 in dissent, but 10 judges thought that the systemic challenges to fairness and so on weren't properly before our court. Your Honor, I believe with all respects that the distinction, as in the words in that case of Veterans for Common Sense v. Nicholson, is will you force to come through the adjudication process the district courts of individual claims in search of some constitutional violation, but this is not the case because there is already a constitutional question being raised where the implementing guidelines for that congressional act solely limits the verification of military service under the Missouri List. So it's true. But, Counsel, I don't think you're answering Judge Gould's question. We've got a case that binds us as a panel that seems to say that your argument is not going to fly here. You've got Congress making the determination that it did. I mean, let's use an analogy. The Congress also says that the only way you can determine whether you filed a tax return is whether you filed a tax return. You can't say, well, you know, I did talk to the people over at the California Franchise Tax Board, and I wrote a book about what I would have filed if I had done the tax return. All that counts is what you filed with the Internal Revenue Service. Can the Congress not do that and say it's unfair because it decided? I mean, we're not here to say we agree with everything Congress does, but that's not our role. We have to implement what the Congress has intended. Correct, Your Honor. But at least in those type of cases you mentioned, they specifically mentioned IRS. In terms of the era of this law, Congress did not mention that the sole mechanism would be the NPRC, which was the standing policy now. It delegated to the Secretary the way it was going to be done. The Secretary made the determination. Yes, Your Honor. But that is not the intent of Congress, because if you look at why this law was passed, it looks at addressing the historical inequity for those veterans who were denied benefits, which for more than 46 years under the Rescission Act. And because of that finding by Congress, the issue is service, not whether or not your name is under the Missouri list. In other words, the intent of Congress is, yes, Your Honor. The question is where you bring up that question. I personally have no reason to doubt that you're on the substance of this. You're right, and this is unfair, because there are people who served and who proved they served, but they weren't on the list or the list didn't survive. That's fine. But that's not unconstitutional for them to not get it. It's a violation. You would say it's a violation of law, a violation of law. And if you went to the veterans courts to decide, then they can decide. They're not deciding. They would, if you went to the veterans, had gone to the veterans courts, you would be making the same argument there, saying, gosh, Congress didn't say that this is the only way you can prove up your entitlement to benefits. And if they said, oh, but it is, then you go up, you make the administrative appeals, and you finally get to a Federal Circuit court. And it's really the question of how you have to whom you have presented this question, not a question of whether Congress intended it to be that way or not. That's not something we can decide. Do you want to save any of your time, counsel, for rebuttal? I will save for rebuttal. I just want to point. Okay. That's fine. Whatever you want to do. Yes. But I just want to point also on the equal protection cause of action. Okay. With the ARA law, what it did was repeal and amend the rescission act of 1946. That's why we cannot say that the Bisinga case and the Kivan case are applicable, decided by this Court, because those two cases were decided under the territory clause of the Constitution. Likewise, they are asserting that because their service are not active military service, then there are no benefits conferred. However, in this case, these plaintiffs and the survivors, the widows, are all U.S. citizens. Now there is a clear definition that their service are active military service. And, therefore, if they are active military service, then the intention is to equalize and address this historical inequity, and, therefore, they should. Isn't it an inequity with respect to people who aren't citizens? I mean, they got the higher amount of money rather than the lower amount of money. Isn't that right? Because they're citizens. That's you're talking of the issue of those who are, Your Honors, in the Philippines and those who are not here who are U.S. citizens. But I'm talking now of whether they should receive the same benefits as their American counterparts. And, Counsel, on that issue, on that particular issue, doesn't the statute say that they're an active combat service for purposes of the FVC? So the statute, at least as I read it, seemed to hem that in, not to say they're in the armed combat services for purposes of equivalency with all veterans for all purposes, but for purposes of getting recovery under this FVEC fund. That is correct. However, Your Honor, they qualified and limit the benefits. After recognizing that they are military service recognized under the U.S. Armed Forces, they limited the benefits in saying that this is actually not benefits but a payment for human suffering. That is why they limit it to $15,000. So what we're looking at is to equalize that situation. And they should be entitled as well to pension benefits, educational benefits, including the widows. Because what the disparate treatment now in terms of equalizing what is now the difference between a veteran returning from Afghanistan or a veteran who has Vietnam or Korean veterans and return here and say that, you know, on the issue that these World War II veterans who are now in their 80s, after being recognized after so many years, who have only a few years to live, what is now the basis for denying them the pension benefits if they have been recognized unlike under the Kivan and the Besinga case, they said, no, they are not active military service and therefore you are not entitled and we are not conferring benefits. Why would Congress then limit it to $15,000 and eliminate other benefits which are due to American like any American veteran? We appreciate it. Counsel, I understand your argument. I think I took you over your time. I'm going to ask Judge Smith if he'd be so kind as to let you have a minute for rebuttal, even though your time is up. Absolutely. I greatly appreciate it, Your Honor. We'll do that. Let's hear now from the government. May it please the Court, Henry Whitaker for the VA. The plaintiffs in this case Mr. Whitaker, if I could give you a question on what's on my mind right at the outset on the due process issue. Although I think there's a big issue on our jurisdiction and the prior Ninth Circuit and bank case, why isn't there something that our court can do about a system under which all the veterans are defined by a list from a record center? I mean, why isn't there something wrong with that? And if there is, why are we precluded from ruling on that? Well, just to take your first question first, Judge Gould, it's not exactly the policy that it's only the records in the record center. The actual policy is that the VA may rely on U.S. service records either provided by the claimant or provided in some other way, or if the claimant is unable to provide such a U.S., an official U.S. service record, then we ask the National Personnel Records Center to verify the claim. And that's an important distinction, because these records. Can I just ask you, we have a number of these folks in the audience today. Have these folks and the others who are not present today each been given an opportunity to present his own records in these cases? I'm not aware that they have, Your Honor. As to the due process claim, the veterans, they did submit claims with the VA, and they had those claims. So the VA received documentation from the claimants, presumably accompanied by documentation that these folks believed substantiated their claim. I would assume so. I don't know specifically what documentation was submitted to the VA. I would note that there's a Federal Circuit case called Capellan. The Federal Circuit decided in 2008, which said that these documents can be considered by the National Personnel Records Center in searching for the claim and contributing to identifying information. So the reason that becomes important, and I'm sure that's what Judge Gould was asking about, and that is, we're really not talking here about an individual Missouri record situation. There's also records that came from the veterans themselves. Is that right? Or at least an opportunity to present those records. Is that correct? Yes, we certainly would consider them. However, it is accurate to say that to the extent their records consist of simply a Filipino government record. It's not the but. It's the part that comes before the but. It seems, strikes me, as important. They did have the opportunity to supply things beyond these records. The agency can consider them. However, there is a regulation, Your Honor, that says that, again, only official U.S. military records can be considered in establishing U.S. military records.   The agency can consider them. So, yes, they can submit, they had an opportunity to submit the records. They had the opportunity to submit U.S. military records. Absolutely. And they did have the opportunity to submit U.S. military records. And if they had a problem with the policy or think it's unconstitutional or violates due process, as I think has been alluded to, they could have brought those claims before the U.S. Court of Appeals for Veterans Claims. And if that court denied them relief, they would have an opportunity to file, to file with the Federal Circuit and ask the Federal Circuit to consider their claims as well. So let me just be sure I understand this. I know, for example, that the old Philippine scouts, which were members of the U.S. military, if I understand correctly, they would have been able to consult U.S. military records and obtain benefits based upon those records. Is that right? Correct. Correct, Your Honor. That's right. And again, this is really not a case about preclusion of judicial review. This is a case about channeling judicial review to this exclusive and comprehensive scheme that Congress set up specifically for adjudicating veterans' benefits claims. This is a scheme where the VA, it's very friendly to the veterans, in fact. The VA has a duty, for example, to assist veterans in developing evidence supporting their claims. Veterans get the benefit of the doubt under this system. And this is why Congress channeled this. So this is not about preclusion of review. With, you know, one thing is, I think if this Court's decision in Veterans for Common Sense said anything, it said that if you have claims where you have individual veterans that are seeking veterans' benefits, that is exactly a textbook kind of claim that needs to be channeled into this exclusive review scheme, both as to the due process claims and as to the equal protection claims. Can I go back and ask a question? Certainly. I've asked, it's been asked to you at least twice, and I just want to make sure I have the answer. I apologize, Your Honor, I'll try again. No, no, no, no, no, no, no. You know this. Jet lag.       There's no set record? Yes. There's no state record? That's right. There's no state record. They have to be officially U.S. government records. Exactly, Your Honor. And there's a regulation on that, actually, that it's, what, 38 U.S.C., 3.203 or, I'm sorry, 38 CFR 3.203, and that's an either or, exactly. And, in fact, I mean, these people who were serving in these units were given, my understanding is that they were given discharge documents and things like that, and so there is a safety valve. And, Judge Gould, just to emphasize, just to go back to your question a little bit, I mean, of course, this is a case that comes to the court on the pleadings, but there is a lot of misunderstanding. We have this up on our website, the VA's website, about the 1973 fire. My understanding, and this is, again, up on the website, is that we don't think that any of the records of these plaintiffs who claim that they were part of the Filipino Commonwealth Army were affected by that fire. And so we don't think that's something we can disagree on. But as you say, that's not something we can disagree on. It's not something, certainly, Your Honor. It's not something, and that would be certainly something. Counsel, let me ask you a question about just the legal structure here. Assuming that we conclude that under Veterans for Common Sense, or under our view of the statutes, that we do not have jurisdiction to address the due process argument that's being made here, that it was required for that argument to go to the Specialized Veterans Appeal Court and then to the Federal Circuit, what's the technical answer? Do we dismiss that without prejudice? Could they reassert those claims still through those channels, or are they foreclosed at this time? I think you would dismiss with prejudice, Your Honor. There is no time limit. They could submit those claims to the VA even today, yes. That said, they might well run into a timing issue under the statute, which provided a year-long window to submit claims. So that might be an issue. So the answer is they couldn't. Well, I think it would be an issue, Your Honor. I mean, of course, with regard to the – I guess I was talking specifically about the widows. The widows, of course, are not, on the face of the statute, are not eligible for filing at all. So with regard to the due process claims, since they submitted those claims to the VA already, they had a one-year time limit to appeal to the board. So the answer to Judge Gould's question is no. Well, there's a safety valve, actually, Your Honor. And we note this in footnote 3 of our brief. I think it's at page 25, where we – there is a safety valve which says that we can reopen a claim for clear error or for new and material evidence. So if something new did come up or if there was a clear error in the decision, the VA could reconsider that claim again. But there is that year time limit with regard to the due process claims. Okay. Perhaps you could address the equal protection claims, because I could be missing something there. It seemed to me that we did have jurisdiction to address those. I disagree with that, Your Honor. Okay. I mean, again, under the exclusive review scheme, there is plainly jurisdiction to consider constitutional claims, and this Court so ruled in the Veterans for Common Sense claim. And again, I think that's the case. Plainly jurisdiction where? I'm sorry, Your Honor. There's plainly jurisdiction in the exclusive review scheme to consider constitutional claims, and that, again, in that scheme is exclusive. And there's no – and I don't think that the Court, though, needs to decide. There's this lingering question from Veterans for Common Sense about facial constitutional claims. And I don't think that the equal protection claims are actually facial constitutional claims, Your Honors. I think those are claims that the statute on its face has applied to these particular claimants, violates equal protection. And since these claimants are seeking, at the end of the day, veterans' benefits, that's plainly what their claims consist of, they fall within the general rule of VCS that if you are an individual claimant seeking individual veterans' benefits claims, that is exactly the kind of claim, both as a statutory and constitutional claim, that must be channeled to the veterans' courts. And those arguments equally apply, Judge Gould, I think, to the equal protection claim. So you think on the equal protection claims, those also had, as you see it, had to go to the specialized veterans' appeal court and then to the Federal Circuit? Yes, Your Honor, and of course, the – and again, the U.S. Court of Appeals for Veterans claims is empowered to decide. That's true unless we decide that they are facial challenges. No, no, Your Honor. I think we would take the same position if they were facial challenges. I didn't mean to suggest that we were – I just meant to suggest the Court doesn't need to decide that question. But, yes, we – our position is, is that even a facial constitutional challenge needs to be channeled through this specialized review scheme. And there's no – there is no exception in the scheme for – for as-applied challenges, challenges that are fact-specific, and facial challenges. It says categorically the Federal Circuit is empowered to decide all questions – you know, all legal questions, including constitutional claims. Putting aside, just for a moment, the jurisdictional issue, let's just assume for discussion purposes that we have jurisdiction to consider the equal protection claim. As I read the record, the plaintiffs pled a rational scrutiny regime in the district court on the equal protection argument. On appeal, they asked for strict scrutiny. How are we to view that, assuming arguendo that we had jurisdiction? Are they – have they waived that issue because they didn't raise it in the district court? Yes, they have – they have waived or forfeited that issue, Your Honor, by not – not raising it. And – but I would add, I mean, and even as should the Court wish to reach the merits of those claims, I think there is plainly a rational basis with regard to the plaintiffs' – Well, the old – the old Filipino Guard would be an example of that, right? The Congress could rationally distinguish certain veterans from other veterans and certain benefits. That's right, Your Honor. And certainly Congress in – in benefit statutes like this has broad leeway under the rational basis test to make – to make – to draw lines and make tough decisions about various groups that can and cannot get benefits. And there's this – the Sims case written by then-Judge Kennedy in 1979 involved a very similar issue under the Social Security Act, where Congress established a more stringent test under the Social Security Act for surviving spouses versus the deceased spouse, and that opinion upheld that under the rational basis standard. And, of course, to the extent the challenge is, to the general – the 1946 Precision Act that established this general distinction between Filipino veterans and U.S. veterans, this Court squarely upheld that distinction in the Bensinger case in 1994. So that would – that would be the end of their equal protection claims. I think I've made all the points that I'd like to make.  Mr. Kramer, do you want to comment? I have no questions. Thank you. You know, I – one – actually, one further point, one last point, Your Honors, is that there was this point about the Secretary hasn't made a decision on the equal protection claims, but that's only because the plaintiffs here never – never bothered to file any claims with the VA. It can't be that you can evade 511 by having claims that are plainly within the scheme, but just not bothering to take advantage of it with the VA. That can't be the way the system works. And so I think those claims – again, the crucial fact with regard to those claims is that they're individual veterans' benefits claims. Okay. Thank you very much. Well, I do have one question, if I could ask one more. Certainly. On the issue of whether the VA could – could reopen this due process issue, who is that question addressed to? Do they have to apply to the VA, or do they have to submit papers to the VA's court? They would first have to – I believe, Your Honor, they would first have to apply to the VA, and then if there were – if there were a claim of error in how the VA disposed of that claim, they could then go to the Board of Veterans' Appeals. And then – and then if there was an error in that, in their disposition of the claim, they could go to the U.S. Court of Appeals for veterans' claims and so on. So I think that would be the way that would be analyzed. Okay. Thank you. Other questions? Thank you very much. We'll give you two minutes of rebuttal time. Thank you, Your Honors. Let me just start with the issue of equal protection. What Section 1002 of AERA established is the disparity in veterans' benefits, and we submit that this is facially discriminatory because all the plaintiffs here, Filipino veterans, are all U.S. citizens, including the plaintiff's spouses of the Filipino war veterans are also U.S. citizens, and their deceased spouses are all U.S. citizens. So like other war veterans eligible to claim full benefits, why that provision of law indicates that there is a quick claim? It's not even considered as payment for veterans, but it's actually a payment for human suffering. And you are limited only in a condition to file that claim within one year. So if they are addressing this historical inequity here, so basically it's facially discriminatory because unlike in Bisinga, as I've mentioned, and Kiban case, they did not deem active military service those filing the claims. Now that they are recognizing that they are veterans and in active military service, therefore, they should be conferred the same benefits. Now on the issue of the NPRC records with regard to that, it is very clear that based on the denials made by the Veterans Affairs, they, plaintiffs are denied on sole ground. They have submitted proof that they are members of the Philippine Commonwealth Army. They have submitted medals and citations. Now the denial says, no, your name is not in the Missouri list and we will deny it. So it's a denial of due process if you solely limit yourself on that. And the government is contradicting itself because these Philippine World War II veterans, when they were naturalized as World War II veterans and became U.S. citizens, the Department of Homeland Security accepted records from the Philippine government, accepted citations, accepted affidavits. Similars in the rules of evidence, rules of admissibility, you are allowed to submit secondary evidence. It's new to us that you're saying now that they might or entertain it. Then the ---- Scalia Let me ask you that because what they, I understand them to have said in the course, is that you can, that you're not limited to the NPRC records, but they have to be official U.S. government military records, so that it's, it's, it's, it's not as broad as you say it should be, but neither is it as narrow as being limited to the NPRC records. Martinez Yes, Your Honor, but if you examine the basis of the denial, it has to be solely based on the fact that your name should appear at the NPRC. And that we, that is, we are questioning as a denial of due process. Kennedy Thank you both for your arguments. The case just argued is submitted and the Court will stand in recess for the day. Martinez Thank you, Your Honor.
judges: Sack, Gould, Smith